UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NED TIMMER,

      Plaintiff,

                                            File No. 1:10-CV-793

v.

                                            HON. ROBERT HOLMES BELL

WOODLAND HOLDINGS CORP., et al.,

      Defendants.

                                         /

## **O P I N I O N**

This matter comes before the Court on Defendants' motion to dismiss Plaintiff Ned Timmer's complaint pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 6.) For the reasons that follow, Defendants' motion will be granted in part and denied in part.

### I.

On July 30, 2010, Timmer filed a claim and delivery action against Defendants[1] in the Ottawa County Circuit Court. Defendants removed the action to this Court on the basis of diversity jurisdiction. Defendants then filed the instant motion to dismiss, claiming that Timmer has failed to state a claim on which relief can be granted.

To survive a motion to dismiss under Rule 12(b)(6), "the complaint must contain

---

[1] Defendants are Woodland Holdings Corp., Woodland Wireless Solutions, Ltd., S Squared, LLC, West Michigan Co-Location Services, LLC, and T2 TV, LLC. Defendant IU Investments, LLC, was dismissed on stipulation of the parties. (Dkt. No. 13.)

either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 903 (6th Cir. 2009) (quoting *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007)). In reviewing the motion, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff," but "need not accept as true legal conclusions or unwarranted factual inferences." *Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 992 (6th Cir. 2009) (quoting *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008)). The complaint's factual allegations must be enough to "raise a right to relief above the speculative level," and "state a claim to relief that is plausible on its face." *In re Travel Agent Comm'n*, 583 F.3d at 903 (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)).

In reviewing a motion under Rule 12(b)(6) the Court may consider any document that is an exhibit to a pleading, Fed. R. Civ. P. 10(c), and any document that is referred to in the pleading and is central to the pleader's claim. *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

## II.

Timmer alleges in his complaint that Woodland Holdings has defaulted under the Secured Debenture as follows:

A. Section 6 (a)(x): Suffering or causing an event that is a "material adverse effect" by terminating several experienced and knowledgeable employees and undertaking to move the switching equipment that is the heart of Defendant S Squared's business operations.

B. Section 6 (a)(iii): Failing to timely perform under the Transaction Document known as the Earn-Out by failing to make payment of $540,000.00 by April 1, 2010.

C. Section 6 (a)(iii): Failing to timely perform under the Transaction Document known as the Unit Purchase Agreement by failing to close on the purchase of T2 Communications, LLC and Phone Services and More, LLC.

D. Section 6 (a)(x): Suffering or causing an event that is a "material adverse effect" by failing to timely pay the IU debt as agreed.

(Dkt. No. 1, Ex. 1C, Compl. ¶ 25)

**A. Employees and Switching Equipment**

Defendants contend that Timmer's allegations that Woodland Holdings terminated several experienced and knowledgeable employees, and that it was undertaking to move the switching equipment fails to state a claim for default under § 6(a)(x) of the Secured Debenture.

Section 6(a)(x) of the Secured Debenture defines an "Event of Default" to include "an event occurs that has, or could reasonably be expected to have, a Material Adverse Effect." (Compl. Ex. 1, Sec. Deb. § 6(a)(x).) "Material Adverse Effect" is defined as

> an effect that results in or causes, or could reasonably be expected to result in or cause, a material adverse effect on (a) the legality, validity or enforceability of any Transaction Document, (b) the results of operations, assets, business or condition (financial or otherwise) of the Issuers [CornerWorld Corporation and Woodland Holdings Corp.] and the Subsidiaries, taken as a whole, . . . or (c) any Issuer's ability to perform in any material respect on a timely basis its obligations under any Transaction Document.

3

(Compl. Ex. 1, Sec. Deb. ¶ 1).

Defendants contend that Timmer has failed to present any "factual matter," let alone "sufficient factual matter," explaining how either moving equipment or terminating certain employees has materially adversely affected the "legality, validity or enforceability of any Transaction Document" or has materially adversely affected Woodland Holdings' "operations, assets, business or condition . . . taken as a whole." Defendants contend that Timmer's allegations do not "permit the court to infer more than the mere possibility of misconduct," and fail to show that Timmer "is entitled to relief." (Dkt. No. 7, Defs.' Br. 10 (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009)).

The factual allegations in the complaint are far from detailed. Nevertheless, construing the complaint in the light most favorable to Timmer, the Court can reasonably infer that the termination of "experienced and knowledgeable employees" and the moving of switching equipment "that is the heart of Defendant S Squared's business operations" are events that have, or could reasonably be expected to have, a "material adverse effect" as defined in the Secured Debenture. The allegations in ¶ 25(A), are sufficient state a claim for relief under § 6(a)(x) of the Secured Debenture that is plausible on its face. Defendants' motion to dismiss ¶ 25(A) will accordingly be denied.[2]

---

[2]Although the Court denied Timmer's objections to the Special Master's report and Timmer's request for preliminary injunctive relief based on similar arguments in the companion case, and expressed doubt that Timmer could prevail on these arguments at trial, the Court also advised that these preliminary findings would not be binding at a trial on the merits. (*CornerWorld v. Timmer*, No. 1:09-CV-1124 (W.D. Mich. Nov. 6, 2010) (Dkt. No. 106, Op. 8).)

**B. Earn Out Agreement**

Timmer alleges that Woodland Holdings has failed to timely perform under the Earn Out agreement (Compl. Ex. 5) by failing to make payment of $540,000 by April 1, 2010. (Compl. ¶ 25(B)). This allegation concerns a dispute between the parties "in connection with or arising out of" the Earn Out Agreement. (Compl. Ex. 5, ¶ 15.)

As this Court found in the companion case, because the Earn Out Agreement specifically provides for arbitration of disputes that arise under that agreement, unless and until a dispute under the Earn Out Agreement has been arbitrated, it is not ripe for consideration as an event of default. (*CornerWorld*, No. 1:09-CV-1124 (Dkt. No. 123, 11/16/2010 Op. 13.)) Defendants' motion to dismiss ¶ 25(B) will accordingly be granted.

**C. Unit Purchase Agreement**

Timmer alleges that Woodland Holdings has defaulted under § 6(a)(iii) of the Secured Debenture by failing to timely perform under the Unit Purchase Agreement by failing to close on the purchase of T2 Communications, LLC and Phone Services and More, LLC. (Compl. ¶ 25(C).)

Defendants contend that Timmer has failed to state a claim for default under § 6(a)(iii) as a matter of law because § 6(a)(iii) only applies where there has been "a default or event of default" under a Transaction document, and the Unit Purchase Agreement does not define a "default or event of default" under its provisions.

Section 6(a)(iii), defines an "event of default" as follows:

> A default or event of default (subject to any grace or cure period provided in the applicable agreement, document or instrument) shall occur under (A) any of the Transaction Documents or (B) any other material agreement, lease, document or instrument to which any Issuer or any Subsidiary is obligated (and not covered by clause (vi) below) . . . .

(Compl. Ex. 1, § 6(a)(iii).) Section 6(a)(iii) is only one of ten defined events of default. Section 6(a)(ii) defines an "event of default" as follows:

> any issuer shall fail to observe or perform any other covenant or agreement contained in this Debenture or any other Transaction Document to which it is a party which failure is not cured, if possible to cure, within thirty (30) Trading Days after notice of such failure sent by the Holder . . . .

(Compl. Ex. 1, § 6(a)(ii). While § 6(a)(iii) focuses on defaults, § 6(a)(ii) focuses on breaches of covenants or agreements.

By its terms, the Secured Debenture is governed by New York law. (Compl. Ex. 1, Sec. Deb. § 7(d).) When interpreting a contract under New York law, "[e]ffect and meaning must be given to every term of the contract . . ., and reasonable effort must be made to harmonize all of its terms . . . Moreover, the contract must be interpreted so as to give effect to, not nullify, its general or primary purpose." *In re El-Roh Realty Corp.*, 902 N.Y.S.2d 727, 729 (N.Y. App. Div. 2010) (quoting *Vill. of Hamburg v. Am. Ref-Fuel Co. of Niagara*, 727 N.Y.S.2d 843, 846-47 (N.Y. App. Div. 2001)); *see also Herzfeld v. Herzfeld*, 857 N.Y.S.2d 170, 171 (N.Y. App. Div. 2008) ("[T]he court should arrive at a construction which will give fair meaning to all of the language employed by the parties to reach a practical interpretation of the expressions of the parties so that their reasonable expectations will be realized.").

6

Based upon the governing New York law, § 6(a)(iii) should not be read in isolation. When § 6(a)(iii) is read in conjunction with § 6(a)(ii), it is clear that § 6(a)(iii) should not be construed to cover breaches covenants or agreements that are not defined as defaults, because such a construction would render § 6(a)(ii) completely nugatory; it would be unnecessary to ever invoke § 6(a)(ii) with its corresponding notice and cure requirement because the failure to perform any covenant in any agreement would be a default or event of default under section 6(a)(iii), regardless of whether the agreement at issue defined the conditions of such a default.

Timmer contends that the failure to go forward with the second closing is a breach of the Unit Purchase Agreement; that the Unit Purchase Agreement is a Transaction Document; and that a default under a Transaction Document is a default under § 6(a)(iii) of the Secured Debenture. (Dkt. No. 9, Pl.'s Br. 16.)[3]

---

[3] Timmer contends that Woodland Holdings' failure to timely close is a default under not only the Secured Debenture, but also under the Purchase Note and security agreements. A default under a Transaction Document is a default under the Secured Debenture. (Dkt. No. 9, Pl.'s Br. 16.) As noted above, the breach of a covenant under the Unit Purchase Agreement is not a default under that agreement. Moreover, contrary to Timmer's assertions, the breach of a covenant under the Unit Purchase Agreement is not a default under either the Purchase Note or the Security Agreement. (*See* Compl. Ex. 2, Purch. Money Note ¶ 9, defining an event of default as "the occurrence of any Event of Default under the Secured Debenture issued by Maker and other parties to Payee on the same date hereof;" Compl. Ex. 3, 4 Security Agrm't ¶ 8, defining an event of default as "[t]he occurrence of any one or more Events of Default by any Obligor under the Debenture or the Seller Note shall constitute an event of default . . . under this Agreement.").

7

It appears that Timmer's argument improperly equates the terms "breach" and "default." The Unit Purchase Agreement is an agreement for the sale and purchase of T2 Communications, LLC and Phone Services and More, LLC. (Compl. Ex. 6, p. 1.) The Unit Purchase Agreement contains various representations, warranties, agreements, and covenants, including the agreement that Seller and Buyer will use "commercially reasonable efforts" to do all things necessary "to consummate and make effective the transaction as promptly as practicable." (Compl. Ex. 6, ¶ 5.4.) However, nowhere in the Unit Purchase Agreement is there a definition of what would constitute a default under the Agreement. Although the Unit Purchase Agreement requires the parties to use commercially reasonable efforts to close, it does not define the failure to do so as a default or an event of default. Timmer's argument with respect to ¶ 25(C) improperly equates the terms "breach" and "default." Timmer has alleged a breach of the Unit Purchase Agreement. However, he has not alleged a default of the Unit Purchase Agreement or a default under § 6(a)(iii) of the Secured Debenture.[4] Accordingly, Timmer's allegations regarding Woodland Holdings' failure to perform under the Unit Purchase Agreement fails to allege a default under § 6(a)(iii) of the Secured Debenture. Defendants' motion to dismiss ¶ 25(C) will accordingly be granted.

**D. Extension of IU Debt**

---

[4] Although Timmer's allegation of a breach of covenants could conceivably be the basis of a default under § 6(a)(ii), Timmer has not asserted a default under § 6(a)(ii), nor has he alleged notice and cure, which are prerequisites to a default under § 6(a)(ii).

Timmer alleges that Woodland Holdings violated § 6 (a)(x) of the Secured Debenture "by failing to timely pay the IU debt as agreed." (Compl. ¶ 25(D).)

Defendants contend that Woodland Holdings' renegotiation of its debt with IU Investment is not a material adverse effect default under § 6(a)(x) as a matter of law because the Secured Debenture expressly permits Woodland Holdings to "extend," or "refinance" the debt with IU Investments.

Section 5 of the Secured Debenture sets forth certain covenants agreed to by Woodland Holdings. Among the covenants listed in section 5 is the following:

> As long as any portion of this Debenture remains outstanding, each Issuer agrees, that unless otherwise consented to by Holder, as follows:
>
> a) it shall not enter into, create incur, assume, guarantee or suffer to exist any indebtedness for borrowed money of any kind, including but not limited to, a guarantee, unless in any such case, the obligations of such Issuer with respect thereto are subordinated to the obligations of such Issuer hereunder on terms satisfactory to the Holder except:
>
> . . .
>
> ii.    indebtedness existing on the date hereof;
>
> . . .
>
> v.    the incurrence of indebtedness by the Issuers and their Subsidiaries that serves to extend, replace, refund, refinance, renew or defease the promissory note issued by Cornerworld on the date hereof to IU Investments, LLC in the amount of $1,900,000
>
> vi.    the incurrence of indebtedness by the Issuers and their Subsidiaries that service [sic] to extend, replace, refund, refinance, renew or defease any of the indebtedness in clause (ii)

(Compl. Ex. 1, Sec. Deb. § 5 (a).)

Timmer points out that the relevant exceptions concerning extensions of indebtedness in section 5 apply only upon the "incurrence of indebtedness." Timmer contends that this is important because **newly** incurred debt that serves to refinance the IU Note would be subordinated to Timmer's security interest, while restructuring or extending **existing** debt would maintain IU's secured position over Timmer's secured position. According to Timmer, Defendants extended the existing IU debt without incurring new debt, which violates a covenant in under the Secured Debenture, and is an event of default.

The Court is satisfied that Timmer's allegations in ¶ 25(D) regarding the extension of the IU Note is sufficient to state a plausible claim of default. Defendants' motion to dismiss ¶ 25(D) will accordingly be denied.

**E. Acquired Companies**

Timmer's claims against the remaining Defendants, Defendant S Squared, T2 TV, and West Michigan Co-Location (the "Acquired Companies"), is based on his contention that the Acquired Companies have defaulted under the terms and conditions of the security agreements between them and Plaintiff "as a result of Woodland Holding's default under the Secured Debenture." (Compl. ¶ 24.)

Defendants move for dismissal of the claims against the Acquired Companies on the basis that the claims have not yet accrued. Defendants contend that because the issue of

whether an event of default has occurred under the Secured Debenture has yet to be determined, there is as yet no breach under the Pledge and Security Agreement, and Timmer's claim against the Acquired Companies is premature as a matter of law.

Timmer has not responded directly to this argument. However, Timmer has alleged that Woodland Holdings has defaulted. Accordingly, regardless of whether or not the Court agrees that there is a default, the claims against the Acquired Companies have arguably accrued. Defendants' motion to dismiss the acquired companies will accordingly be denied.

### III.

For the reasons stated herein, Defendants' motion to dismiss will be granted in part and denied in part. The motion will be granted as to ¶ 25(B) alleging default based upon the Earn Out Agreement, and ¶ 25(C) alleging default based upon the Unit Purchase Agreement. The motion will be denied as to ¶ 25(A) alleging default based upon employees and switching equipment, and ¶ 25(D) alleging default based upon extension of the IU debt, and as to the acquired companies.

An order consistent with this opinion will be entered.

Dated: December 15, 2010         /s/ Robert Holmes Bell
                                 ROBERT HOLMES BELL
                                 UNITED STATES DISTRICT JUDGE